## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**TIKILA WILLARD,**

  **Petitioner,**

 **v.**                                                    **CIVIL NO. 10-63 WJ/LAM**

**ARLENE HICKSON, et al.**

  **Respondents.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner Tikila Willard's ***Petition Under 28 U.S.C.***

***§ 2254 for Writ of Habeas Corpus by a Person in State Custody*** *(Doc. 1)* (hereinafter "***Petition***"),

filed on January 26, 2010.  In response to the ***Petition***, Respondents filed ***Respondents' Answer to***

***Petition for Writ of Habeas Corpus (28 U.S.C. § 2254)*** *(Doc. 8)* (hereinafter "***Response***") on

March 15, 2010.  Ms. Willard filed her ***Reply to Respondents' Request to Dismiss Petition*** *(Doc. 9)*

(hereinafter "***Reply***") on March 24, 2010.  United States District Judge William P. Johnson referred

the claims raised in the ***Petition*** to the undersigned for proposed findings and a recommended

disposition, and a hearing, if necessary.  *See **Order of Reference Relating to Bankruptcy Appeals,***

***Social Security Appeals and Prisoner Cases*** *(Doc. 3).*  Having considered the parties' submissions,

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that the claims raised in Ms. Willard's ***Petition*** be **DENIED** because they are without merit and that this case be **DISMISSED with prejudice**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

Ms. Willard is incarcerated and proceeding *pro se*. *See **Order** (Doc. 5)* (granting Ms. Willard's ***Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (Doc. 2)***). Because she is a *pro se* litigant, the Court construes her ***Petition*** liberally and holds it to a less stringent standard than pleadings drafted by an attorney. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

## I. Factual and Procedural Background

On January 3-4, 2006, two narcotics agents, working undercover, gave Mr. Webb[2] a $100 bill to purchase cocaine for them. *See **Response**, Exhibit D (Doc. 8-1)* at 20 (the New Mexico Court of Appeals' Proposed Summary Affirmance providing summary of events leading to Ms. Willard's arrest located in, and citing to the record of, Ms. Willard's trial). Mr. Webb did not know that the agents were police officers. *Id.* The officers watched Mr. Webb make a telephone call, then watched him get into a vehicle driven by Ms. Willard. *Id.* When Mr. Webb exited the vehicle, he and Ms. Willard were arrested, and the agents found that Mr. Webb had a rock of cocaine in his shirt pocket and Ms. Willard had a $100 bill in her hand. *Id.* Ms. Willard was charged with

---

[2]As explained in other documents in this case, Mr. Webb is Donald Webb. *See, e.g. **Response**, Exhibit C (Doc. 8-1)* at 9 (stating that Donald Webb was a co-defendant in Ms. Willard's state criminal case).

Trafficking Controlled Substances (Distribution), in violation of N.M.S.A. 1978, § 30-31-20(A)(2). *See id.*, Exhibit A *(Doc. 8-1)* at 1, and Exhibit Q *(Doc. 8-3)* at 9.[3]  A jury trial was held on August 28, 2007.  *See id.*, Exhibit Q *(Doc. 8-3)* at 14.  It appears that the State moved to admit as evidence at trial a statement made by Mr. Webb regarding what had occurred in Ms. Willard's vehicle on the basis that Mr. Webb was unavailable because he had been adjudged incompetent.  *See id.*, Exhibit D *(Doc. 8-1)* at 21-22.  Ms. Willard's counsel objected to the admission of Mr. Webb's statement and asked to elicit testimony from the agents that Mr. Webb was unavailable because he had been found to be incompetent.  *Id.*  The trial judge "ruled that the State could not have the officers testify as to what Mr. Webb said, nor could Defendant [Ms. Willard] explore Mr. Webb's incompetency."  *Id.*, Exhibit D *(Doc. 8-1)*  at 22.  Ms. Willard was convicted on August 28, 2007. *Id.*, Exhibit A *(Doc. 8-1)* at 1, *see also id.*, Exhibit Q *(Doc. 8-3)* at 14.

On February 20, 2008, the state district court judge in Ms. Willard's case held a hearing at which he sentenced her to 18 years for her conviction, as well as an additional one-year enhancement pursuant to the Habitual Offender Act.  *See id.*, Exhibit A *(Doc. 8-1)* at 2 (stating that the state district court found Ms. Willard to be a habitual criminal offender after having found her to be "one and the same person as alleged in the counts contained in the Supplemental Criminal Information"),[4] *see also id.*, Exhibit Q *(Doc. 8-3)* at 12-13.  An 18-year sentence is the basic

---

[3]The Court takes judicial notice of the copy of the state court docket for Ms. Willard's state criminal case which is attached to Respondents' **Response** as Exhibit Q.  *See Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (citations omitted) (stating that a court may take judicial notice of facts that are a matter of public record); *Stack v. McCotter*, No. 02-4157, 79 Fed. Appx. 383, 391-92, 2003 WL 22422416 (10th Cir. 2003) (unpublished) (federal court may take judicial notice of docket sheet entries in related state court proceeding).

[4]Exhibit A, attached to the **Response**, is the "Amended Judgment, Sentence, and Order Determining Habitual Offender Status," entered in Ms. Willard's state criminal case on March 12, 2008.  The Court does not have a copy of the February 20, 2008, Judgment, Sentence and Order Determining Habitual Offender Status, but the Amended Order states that it is "Amended to reflect the additional pre-sentence confinement" (**Response**, Exhibit A *(Doc. 8-1)* at 3), so the Court assumes the rest of the information in that document is the same as is in the February 20, 2008, document.
(continued...)

sentence under N.M.S.A. 1978, § 31-18-15 for a second or subsequent violation of N.M.S.A. 1978, § 30-31-20(A)(2).  *See* N.M.S.A. 1978, § 30-31-20(A)(2) (stating that a person who violates this section for the second and subsequent offenses is "guilty of a first degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15"), N.M.S.A. 1978, § 31-18-15(A)(3) (stating that for a first degree felony the basic sentence of imprisonment is 18 years).  Upon completion of imprisonment, Ms. Willard will be "subject to release under parole supervision for a period of two (2) years, subject to the statutory provisions relating to condition, supervision, and return of parolees."  ***Response***, Exhibit A *(Doc. 8-1)* at 2.

On February 27, 2008, Ms. Willard filed a motion for appointment of appellate counsel, which was granted on February 29, 2008.  *See id.*, Exhibit Q *(Doc. 8-3)* at 12.  Her appellate counsel filed a notice of appeal of Ms. Willard's conviction and sentence in the state district court on February 27, 2008.  *Id.*, Exhibit B *(Doc. 8-1)* at 4.  On May 29, 2008, Ms. Willard's appellate counsel filed a Docketing Statement with the New Mexico Court of Appeals stating that her appeal was being brought on the following issues: (1) the district court's denial of Ms. Willard's expert witnesses, Allen Farkas and Kevin Clements; (2) the district court's alleged failure at sentencing to set an appeal bond or to inform Ms. Willard of her right to appeal; (3) the insufficiency of the evidence against Ms. Willard; and (4) the district court's failure to allow Ms. Willard to inquire about the testimony of co-defendant Donald Webb.  *Id.*, Exhibit C *(Doc. 8-1)* at 6-14.  On July 8, 2008, the New Mexico Court of Appeals entered a Notice of Proposed Summary Disposition, proposing summary affirmance on all issues raised in Ms. Willard's Docketing Statement.  *Id.*,

---

[4](...continued)
*See also **Response***, Exhibit Q *(Doc. 8-3)* at 11 (stating that the amended judgment was "amended to reflect additional pre-sentence confinement from 140 days to 176 days).

Exhibit D *(Doc. 8-1)* at 15-22.  On September 30, 2008, Ms. Willard's appellate counsel filed a Memorandum in Opposition to Proposed Summary Affirmance.  *Id.*, Exhibit E *(Doc. 8-1)* at 23-33. On November 5, 2008, the New Mexico Court of Appeals entered a decision affirming Ms. Willard's conviction and sentence.  *Id.*, Exhibit F *(Doc. 8-1)* at 34-45.  On November 21, 2008, Ms. Willard's appellate counsel filed a Petition for Writ of Certiorari asking the New Mexico Supreme Court to review the New Mexico Court of Appeals' Memorandum Opinion.  *Id.*, Exhibit G *(Doc. 8-1)* at 47-56.  The New Mexico Supreme Court summarily denied the Petition for Writ of Certiorari on December 19, 2008.  *Id.*, Exhibit H *(Doc. 8-1)* at 77.

On April 22, 2009, Ms. Willard filed a *pro se* Motion for Reconsideration of Sentence with the state district court (*id.*, Exhibit I *(Doc. 8-2)* at 1-2), which was denied by the state court on the same day (*id.*, Exhibit J *(Doc. 8-2)* at 3).  On October 22, 2009, Ms. Willard filed a *pro se* Petition for Writ of Habeas Corpus with the state district court.  *Id.*, Exhibit L *(Doc. 8-2)* at 4-44.[5]  In her Petition for Writ of Habeas Corpus, Ms. Willard argued that her sentence was illegal for the following reasons: (1) that her trial counsel was ineffective (*id.*, Exhibit L *(Doc. 8-2)* at 11-18, listing 19 reasons for ineffective assistance of counsel); (2) that the trial court abused its discretion or was biased (*id.* at 18-20, listing 8 reasons for the trial court's bias); (3) that her conviction was obtained through wilful misconduct by the state and its witnesses (*id.* at 21-24, listing 13 reasons for the state's and the state's witnesses' misconduct); and (4) insufficiency of the evidence for her conviction (*id.* at 24-25).  The state district court summarily dismissed Ms. Willard's Petition for Writ of Habeas Corpus on October 22, 2009, stating that Ms. Willard was not entitled to relief as

---

[5]It appears that Ms. Willard's Petition for Writ of Habeas Corpus may have been submitted to the state district court on September 2, 2009.  *See id.* at 45 (Document titled "Request for State Court to file Timely Instant Petition Submitted 9-2-09"), *see also id.* at 9 (showing that Ms. Willard signed her state habeas petition, had it notarized and signed the Certificate of Service by mail on August 31, 2009).

a matter of law because her primary issues (failure to mark the $100 bill and the role of Mr. Webb) were presented to and decided by the New Mexico Court of Appeals adverse to her and in favor of the jury's verdict finding her guilty. *Id.*, Exhibit M *(Doc. 8-2)* at 47. On October 29, 2009, Ms. Willard filed a "Motion to Amend, Alter, or Vacate Order of Denial Addendum to Writ of Habeas Corpus Petition Filed Sept. 2, 2009" in the state district court, stating that she had additional evidence regarding her ineffective assistance of counsel claim. *Id.*, Exhibit N *(Doc. 8-3)* at 1-6 (discussing evidence relating to a diagnostic evaluation report describing Ms. Willard's mental illnesses and background, which she stated was evidence that could have shortened her sentence, and discussing additional case law supporting her claims in her Petition for Writ of Habeas Corpus). It appears that Ms. Willard's Petition for Writ of Certiorari was received by the New Mexico Supreme Court on December 17, 2009, and the New Mexico Supreme Court sent a letter to Ms. Willard that same day explaining that her Petition for Writ of Certiorari was untimely because it should have been filed on or before November 22, 2009. *Id.*, Exhibit O *(Doc. 8-3)* at 7.[6] On January 4, 2010, Ms. Willard then filed a "Motion for Re-Instatement of Petition for Review" with the New Mexico Supreme Court stating that her "Motion to Amend, Alter, [or Vacate Order of Denial Addendum to Writ of Habeas Corpus Petition Filed Sept. 2, 2009]" had not been ruled on by the state district court and "deserve[d] review due to state court's lack of 'controlling authority' used in its decision to dismiss." ***Petition (Doc. 1-3)*** at 2. The New Mexico Supreme Court sent a letter to Ms. Willard on January 11, 2010, stating that her "documents are being returned as untimely filed," and that "[a]ny challenge to the district order dismissing the petition for writ of habeas corpus issued on October 22, 2009, had to be filed within 30 days of the order pursuant to Appellate

---

[6]An unfiled copy of Ms. Willard's Petition for Writ of Certiorari is attached to the ***Petition (Doc. 1-3)*** at 34-38, which was signed by Ms. Willard on December 15, 2009.

Rule 12-501 NMRA." *Response*, Exhibit P *(Doc. 8-3)* at 8.  Her state petition was returned to her and never filed because it was untimely.  On January 26, 2010, Ms. Willard filed her *Petition* for federal habeas relief in this Court, initiating this proceeding.  *See Petition (Doc. 1).*

## II.  Ms. Willard's Section 2254 Claims

In her *Petition*, Ms. Willard raises four grounds for relief, which are essentially identical to those raised in her Petition for Writ of Habeas Corpus filed in the state district court.  Those claims are: (1) that her trial counsel was ineffective (*Petition (Doc. 1)* at 15-20, listing 19 reasons for ineffective assistance of counsel); (2) that the trial court was biased against Ms. Willard (*id.* at 20-22, listing 7 reasons for the trial court's bias); (3) that the state engaged in prosecutorial misconduct (*id.* at 22-26, listing 13 reasons for prosecutorial misconduct); and (4) insufficiency of the evidence for her conviction (*id.* at 26-27).   In their *Response*, Respondents argue that Ms. Willard's *Petition* should be dismissed because: (1) Ms. Willard's *Petition* is procedurally barred because she failed to timely file a petition for writ of certiorari with the New Mexico Supreme Court following the denial of her state habeas corpus petition (*Response (Doc. 8)* at 6-8); and (2) Ms. Willard fails to show that the state court proceedings either resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings (*id.* at 8 (citations omitted)).   Additionally, Respondents assert that Ms. Willard has not offered clear and convincing evidence to overcome the presumption of correctness applied to state court factual determinations pursuant to 28 U.S.C. § 2254(e)(1).  *Id.* at 9. Respondents ask the Court to dismiss the *Petition*.  *Id.* at 11.  In her *Reply*, Ms. Willard essentially contends that her *Petition* is not procedurally barred because (1) the direct appeal of her conviction sufficiently exhausted her claims; and (2) her "Motion to Amend, Alter or Vacate Order of Denial"

tolled the time period for filing a motion for a writ of certiorari to the New Mexico Supreme Court. *Reply (Doc. 9)* at 2, 4. Ms. Willard also states that Respondents are procedurally barred from raising any affirmative defenses because their *Response* was untimely filed on March 15, 2010. *Id.* at 6.[7]

### III. Exhaustion of State Court Remedies

A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). The Tenth Circuit has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court. *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). When a petitioner has failed to fulfill the exhaustion requirement, a court will generally dismiss the petition without prejudice to allow the petitioner to exhaust his state remedies. *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997) (citations omitted). "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts." *Id.* "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992) (citation omitted). A federal court will not consider defaulted claims unless the

---

[7]The Court finds that Ms. Willard's contention that Respondents' affirmative defenses have been waived because their *Response* was untimely filed fails because: (1) the *Response* was filed no later than five days after it was due (*see Order (Doc. 6)*, filed February 8, 2010, stating that Respondents' answer to the *Petition* is due within 30 days from entry of the order, which would have been March 10, 2010); and (2) Ms. Willard does not claim any prejudice from this delay.

petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice (*see Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999) (citation and internal quotation marks omitted)), or if the Court determines that the claims can be resolved on the merits (*see* 2254(b)(2) (providing that a federal habeas court may deny a claim on the merits, notwithstanding the failure to exhaust state remedies); *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000) (declining to address complex procedural bar because case could be more easily and succinctly affirmed on the merits)).

As described in Section II above, Respondents argue that Ms. Willard's **Petition** should be dismissed based on procedural default.  **Response *(Doc. 8)*** at 6-8.  First, the Court finds that those claims raised in Ms. Willard's direct appeal that are also raised in her federal habeas petition are not procedurally barred because they were properly presented to the New Mexico Supreme Court.  *See Dever*, 36 F.3d at 1534 (holding that claims are exhausted when they have "been properly presented to the highest state court, either by direct review of the conviction *or* in a postconviction attack") (emphasis added) (citation omitted).  Those claims include: (1) that the state district court erred in failing to allow Ms. Willard to inquire into Mr. Webb's incompetency, which was raised in Ms. Willard's direct appeal (*see* **Response**, Exhibit C *(Doc. 8-1)* at 6 and 11, and **Response**, Exhibit E *(Doc. 8-1)* at 28-30) and in her **Petition** *(Doc. 1)* at 20; (2) that the state district court erred in limiting the number of expert witnesses Ms. Willard could present for her defense, which was raised in her direct appeal (*see* **Response**, Exhibit C *(Doc. 8-1)* at 6 and 10, and **Response**, Exhibit E *(Doc. 8-1)* at 30-31) and in her **Petition** *(Doc. 1)* at 21; and (3) that Ms. Willard was convicted on insufficient evidence, which was raised in her direct appeal (*see* **Response**, Exhibit C *(Doc. 8-1)* at 6 and 10, and **Response**, Exhibit E *(Doc. 8-1)* at 27-28) and in her **Petition** *(Doc. 1)* at 22, 26-27.

Ms. Willard's remaining claims in her *Petition*, however, were not properly presented to the New Mexico Supreme Court.  While those claims were raised in Ms. Willard's Petition for Writ of Habeas Corpus filed with the state district court (*compare Response*, Exhibit L *(Doc. 8-2)* at 11-25 *with Petition (Doc. 1)* at 15-27), the state district court rejected the claims and denied her state habeas petition on October 22, 2009 (*see Response*, Exhibit M *(Doc. 8-2)* at 47), and Ms. Willard failed to timely file a petition for a writ of certiorari with the New Mexico Supreme Court.  Under New Mexico's procedural rules, a petitioner may file a petition for a writ of certiorari with the New Mexico Supreme Court within thirty days of the state district court's order denying the habeas corpus petition.  *See* N.M.R.A. 12-501(B).  While Ms. Willard filed a "Motion to Amend, Alter or Vacate Order of Denial" with the state district court on October 29, 2009 (*see Response*, Exhibit N *(Doc. 8-3)* at 1-6), she submitted her Petition for Writ of Certiorari to the New Mexico Supreme Court more than thirty days after the state district court denied her state habeas petition (*see Response*, Exhibit O *(Doc. 8-3)* at 7).  These claims are, therefore, procedurally defaulted for purposes of federal habeas review and should not be considered by this Court unless Ms. Willard can demonstrate cause and prejudice or a fundamental miscarriage of justice (*see Smallwood*, 191 F.3d at 1268), or if the Court determines that the claims can be easily resolved on the merits (*see* § 2254(b)(2), and *Romero*, 215 F.3d at 1111).

In order to satisfy the "cause" standard, Ms. Willard would need to show that "some objective factor external to the defense impeded [her] compliance with New Mexico's procedural rules."  *Watson v. State of New Mexico*, 45 F.3d 385, 388 (10th Cir. 1995) (citations omitted).  It appears that Ms. Willard may be claiming that she was waiting for a ruling by the state district court on her Motion to Amend, Alter or Vacate Order of Denial before filing a petition for a writ of certiorari with the New Mexico Supreme Court.  *See Reply (Doc. 9)* at 3-4.  While ignorance of the

-10-

rules or the law does not constitute the "cause" standard necessary to overcome procedural default, a petitioner's lack of knowledge due to a lack of reasonable access to the rules could constitute "cause" so that the procedural bar should not be enforced by the federal court. *See Watson*, 45 F.3d at 388 (remanding for district court to consider whether petitioner's claims should be procedurally defaulted when he claimed ignorance of state procedures due to inadequacy of the prison's library), and *Dulin*, 957 F.2d at 760 (10th Cir. 1992) (remanding for district court to make factual and legal inquiry into whether petitioner had no reasonable access to or notice of appellate rules in Utah due to his incarceration in Nevada, which would constitute "cause"). Ms. Willard does not allege that any objective factor external to her defense caused her to fail to comply with New Mexico's procedural rules. In addition, to demonstrate a "fundamental miscarriage of justice" in order to overcome a procedural bar, Ms. Willard would need to make "a colorable showing of factual innocence." *Demarest*, 130 F.3d at 941 (citation omitted). A claim of factual innocence requires "evidence of innocence so strong that a court cannot have any confidence in the outcome of the trial." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998). Ms. Willard has not made any such showing of factual innocence.

Nevertheless, the Court finds that even if these claims have not been exhausted, in the interests of judicial economy, and pursuant to 28 U.S.C. § 2254(b)(2), the Court will consider all of Ms. Willard's claims in this case on the merits and recommend, for the reasons set forth below, that relief be denied. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), *see also Patton v. Mullin*, 425 F.3d 788, 809-10 (10th Cir. 2005) (citing 28 U.S.C. § 2254(b)(2) as authority for the consideration of unexhausted § 2254 claims on the merits where the petitioner's claims were unexhausted and procedurally barred

and where petitioner did not argue the exceptions to the procedural bar of "cause and prejudice" or "fundamental miscarriage of justice").

## IV.  Claims for Habeas Corpus Relief

### A.  Standards of Review

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and  Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case.  The Court cannot grant Ms. Willard habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in her state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.  *See, e.g., Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*, 551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413.  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.*  However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions.  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law).  Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply.  So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."  *See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision).  Moreover, if a state court's decision does not conflict with the  reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.  If a state court decides a claim on the merits in

summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413.  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).  "Rather, that application must be objectively unreasonable."  *Id.* at 76.  A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court.  *See Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 747 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 654 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings.  *See* 28 U.S.C. § 2254(d).  If the state court did not adjudicate the claim on the merits, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)).  Under the pre-AEDPA standard of review,

a state court's findings of fact are afforded a presumption of correctness, and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-16 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions." *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)). *See also* 2 Randy Hertz and James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 32.1 at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### B. Analysis

Subject to the foregoing standards, the Court considers Ms. Willard's claims in this proceeding.

#### 1. Ms. Willard's Ineffective Assistance of Counsel Claims

Ms. Willard contends that she was denied constitutionally effective assistance of counsel by her trial counsel for the following reasons: (1) failure to file a pretrial motion to suppress the $100 bill used in the alleged drug transaction; (2) failure to interview the state's witnesses prior to trial such that her counsel could neither impeach those witnesses nor use their testimony to support Ms. Willard; (3) failure to file a pretrial motion to preserve evidence regarding the rock cocaine; (4) failure to have a coherent strategy to defend Ms. Willard by failing to present any experts regarding the police lab reports and failing to challenge the state's allegations regarding the evidence; (5) failure to submit payroll stubs from Ms. Willard's employment as a home healthcare provider to the jury to show she had been employed; (6) failure to thoroughly cross-examine the state's witnesses regarding their prior knowledge of Mr. Webb's incompetence and his residence being known as an established crack house; (7) failure to object to the dismissal of an

African-American juror; (8) failure to compel disclosure of any taped phone conversations between Ms. Willard and Mr. Webb; (9) failure to thoroughly cross-examine Deputy Parker and Agent Garrison regarding custody of the evidence in Ms. Willard's case; (10) failure to file a pretrial motion regarding Mr. Webb's competency; (11) failure to attempt to interview Mr. Webb; (12) failure to allow Ms. Willard to participate in her own defense or to testify on her own behalf; (13) failure to present possible exculpatory evidence by calling Johnny Harris as a defense witness or to depose Mr. Harris; (14) filing many continuances which were not to Ms. Willard's advantage; (15) failure to allow Ms. Willard her right of "allocutus" [sic], which may have resulted in the trial court exercising a discretionary suspension of her sentence enhancement; (16) failure to advise Ms. Willard regarding the plea agreement to make her aware of her risk of a harsher sentence by going to trial; (17) failure to file a pretrial motion to dismiss charges based on circumstantial evidence because neither of the state's witnesses observed the drug transaction occur; (18) failure to inform Ms. Willard of the strict sentencing guidelines she was facing if she went to trial; and (19) failure to vigorously defend Ms. Willard at sentencing or to mitigate her sentence by using the diagnostic and evaluation test results from NMWCF at Grants, New Mexico. *Petition (Doc. 1)* at 15-20.

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Ms. Willard must show that (a) her attorney's performance fell below an objective standard of reasonableness, and (b) she was prejudiced by the attorney's deficient performance. *Id.* at 687-88. Both showings must be made to satisfy the *Strickland* standard. *Id.* at 687. To demonstrate unreasonable performance, Ms. Willard must show that her attorney made errors so serious that her

performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Ms. Willard must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for her attorney's alleged unprofessional errors. *Id.* at 694. The Court does not have to address both prongs of the *Strickland* standard if Ms. Willard makes an insufficient showing on one of the prongs. *Id.* at 697.

The Court finds that Ms. Willard's claims regarding her counsel's ineffective assistance fail because Ms. Willard does not establish that her counsel's performance was objectively unreasonable, nor does she identify how her counsel's alleged errors would have altered the outcome of her case. First, the Court finds that all of Ms. Willard's conclusory allegations regarding her counsel's effectiveness should be denied because Ms. Willard fails to allege sufficient facts on which to base those claims. *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Such conclusory allegations include Ms. Willard's claim that her counsel was ineffective for failing to interview the state's witnesses in order to either impeach them or somehow support the defense. ***Petition (Doc. 1)*** at 16 (claim 2). Ms. Willard does not provide any facts upon which the Court can find that these witnesses could have been impeached or could have supported Ms. Willard's defense. In addition, Ms. Willard's claims that her counsel was ineffective for: failing to submit her payroll stubs to the jury (*id.* (claim 5)); failing to allow Ms. Willard to participate in her defense or to testify on her own behalf (*id.* at 18 (claim 12)); requesting continuances that did not benefit Ms. Willard's defense (*id.* at 19 (claim 14)); and failing to introduce Johnny Harris as a defense witness "who had possible exculpatory testimony for the defense" (*id.* at 18-19 (claim 13)), are all conclusory because Ms. Willard does not provide any facts that show that the outcome of her trial would have been any

different had her counsel done all of the things she claims he should have.  Ms. Willard fails to show that there is a reasonable probability that the payroll stubs, Ms. Willard's testimony, the continuances, or Johnny Harris' testimony would have resulted in a different outcome.  Ms. Willard alleges no facts regarding these allegations and, therefore, they should be denied.

Next, Ms. Willard's claims regarding the evidence in her case  (the $100 bill and the rock cocaine) (claims 1, 3, 4, and 9) fail to provide any indication that the outcome of Ms. Willard's case would have been different had that evidence been handled differently.  Ms. Willard claims that her counsel should have filed a motion to suppress the $100 bill because it had been improperly preserved by the state (***Petition (Doc. 1)*** at 15 (claim 1)), but she provides no argument as to how suppression of the $100 bill would have resulted in a different outcome in her criminal case, especially in light of the officers' testimony that they gave Mr. Webb a $100 bill with which to purchase cocaine, witnessed him get into a vehicle driven by Ms. Willard, and when he and Ms. Willard exited the vehicle, Mr. Webb had a rock of cocaine and she had a $100 bill in her hand.  Suppressing the $100 bill would likely not have affected the jurors' consideration of this testimony which was sufficient to support their guilty verdict.  Ms. Willard also argues that the rock cocaine was destroyed and that her counsel should have filed a motion to preserve that evidence.  *Id.* at 16 (claim 3).  Ms. Willard fails to explain how the preservation and introduction of the rock cocaine as evidence would have resulted in a different outcome in her trial.  She has presented no argument that her defense to the criminal charge was that the substance she sold to Mr. Webb was, in fact, not cocaine.  Similarly, Ms. Willard's conclusory allegations that her trial counsel was inefficient in his failure to challenge the state's allegations regarding the evidence in her case (*id.* at 16 and 18 (claims 4 and 9)) fail to establish an ineffective assistance of counsel claim under *Strickland*.  *See*

*Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Ms. Willard's claims regarding Mr. Webb also do not establish that her trial counsel's assistance was ineffective. Ms. Willard argues that her counsel was ineffective regarding Mr. Webb because her counsel: failed to thoroughly cross-examine the state's witnesses regarding their prior knowledge of Mr. Webb's incompetence and his residence being known as an "established crack house" (**Petition** *(Doc. 1)* at 16 (claim 6)); failed to compel disclosure of any taped phone conversations between Ms. Willard and Mr. Webb (*id.* at 17 (claim 8); failed to file a pretrial motion regarding Mr. Webb's competency because Mr. Webb "was introduced into trial by lab evidence" (*id.* at 18 (claim 10); and failed to attempt to interview Mr. Webb (*id.* (claim 11). Ms. Willard fails to explain how the outcome of her trial would have been different but for these alleged errors by her counsel. The New Mexico Court of Appeals ruled in Ms. Willard's direct appeal that "the officer's testimony about the sequence of events that led up to Mr. Webb and [Ms. Willard]'s meeting, as well as the fact that Mr. Webb was arrested with the cocaine and [Ms. Willard] was arrested with a $100 bill in her hand immediately thereafter, provide substantial evidence from which a rational jury could conclude that [Ms. Willard] sold $100 of cocaine to Mr. Webb on the date at issue." **Response**, Exhibit F *(Doc. 8-1)* at 42. Ms. Willard does not state how her counsel's performance could have changed that outcome of her trial, and her conclusory statements that her counsel should have more thoroughly cross-examined the state's witnesses, attempted to introduce taped conversations (the content of which Ms. Willard does not reveal), or interview or file motions regarding Mr. Webb, do not establish that her counsel was ineffective.

Ms. Willard's allegation regarding her counsel's failure "to object to the dismissal of the second prospective African American juror" also fails to rise to the level of ineffective assistance

of counsel.  **Petition (Doc. 1)** at 17 (claim 7).  Ms. Willard alleges that out of fifty prospective jurors

who were summoned, "only one black citizen was interviewed."  *Id.*  In order to establish a *prima*

*facie* violation of the Sixth Amendment right to a venire representing a fair cross section of the

community, a petitioner must show: (1) that the group alleged to be excluded is a distinctive group

in the community; (2) that the representation of this group in venires from which juries are selected

is not fair and reasonable in relation to the numbers of such persons in the community; and (3) that

this under-representation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Ms. Willard has not met her burden to show that there

was a systematic and deliberate exclusion of African-American potential jurors in the jury selection

process.  *See, e.g. Trujillo v. Sullivan*, 815 F.2d 597, 610-11 (10th Cir. 1987).  There is also no

showing made by Ms. Willard that there was any basis for her counsel to make a claim regarding

the fair cross-section of the community.  Ms. Willard, therefore, fails to show that her counsel's

failure to challenge the jury selection procedure was objectively unreasonable and caused prejudice

to her defense.

Ms. Willard's claims regarding her counsel's performance regarding her plea agreement and

sentencing also fail to establish ineffective assistance of counsel claims.  Ms. Willard claims that

her counsel failed to allow her right of "allocutus" [sic] that may have resulted in a discretionary

suspension of her sentence enhancement.  **Petition (Doc. 1)** at 19 (claim 15).  It appears that

Ms. Willard is referring to the right of allocution, which is either a "trial judge's formal address to

a convicted defendant, asking him or her to speak in mitigation of the sentence to be

imposed  . . . [as] required under Fed. R. Crim. P. 32(c)(3)(C)," or an "unsworn statement from a

convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy,

explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the

impending sentence."  BLACK'S LAW DICTIONARY (9th ed. 2009).  Ms. Willard does not

explain what she would have said to the judge that may have led him to suspend the enhancement

of her sentence under the habitual offender statute.  Ms. Willard, therefore, fails to allege facts that

establish a reasonable probability that, had she exercised her right of allocution, the outcome of her

proceeding would have been different, and this claim for ineffective assistance of counsel should

be denied.

Ms. Willard also claims that her counsel failed to advise her of the risks she faced if she did

not enter a plea agreement (***Petition*** *(Doc. 1)* at 19 (claim 16)), failed to inform her of the strict

sentencing she faced if she proceeded to trial (*id.* at 20 (claim 18)), and "failed to vigorously defend

her at sentencing" (*id.* (claim 19)).  Ms. Willard does not present any facts that, but for her counsel's

allegedly unreasonable performance, she would have entered a plea agreement.  Ms. Willard,

therefore, fails to show prejudice by her counsel's alleged unreasonable performance, and these

claims should be denied.

Finally, Ms. Willard's claim that her counsel was ineffective because he failed to file a

motion to dismiss the charge against her "due to the circumstantial evidence and a case that relied

100% on 'speculation'" also fails to rise to the level of an ineffective assistance of counsel claim.

*Id.* at 19 (claim 17).  Ms. Willard does not show that there is a reasonable probability that such a

motion would have been successful, especially since the New Mexico Court of Appeals ruled in

Ms. Willard's direct appeal that there was sufficient evidence presented in her trial from which a

rational jury could convict her.  *See **Response***, Exhibit F *(Doc. 8-1)* at 42.  Under New Mexico law,

jurors can consider circumstantial evidence.  *See* NM-UJI 14-50001 ("There are two types of

evidence.  One is direct evidence, . . . which directly proves a fact.  The other is circumstantial

evidence [which] means evidence that proves a fact from which [the jury] may infer the existence

of another fact.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case.").  Given the testimony by the undercover officers, this is a classic case of the jury's consideration of permissible circumstantial evidence and their verdict was not based on "100% speculation."  The Court, therefore, finds that Ms. Willard does not show prejudice by her counsel's alleged unreasonable performance and this claim should also be denied.

### 2. *Ms. Willard's Claim That the Trial Court was Biased Against Her*

Next, Ms. Willard claims that the trial court was biased against her because: (1) the court excused the second African-American prospective juror before the voir dire process began; (2) the court did not allow the defense to engage in questioning regarding Mr. Webb's competency and dismissed the charges against him; (3) the trial judge stated "I would have been happy to have given you the 22 years," and that, in Texas, Ms. Willard would have received a life sentence; (4) the court limited Ms. Willard's expert witnesses; (5) the court allowed the case to proceed even though it was based on speculation; (6) the court bypassed unnamed constitutional safeguards under the 6th and 14th Amendments; and (7) the court failed to review an evaluation and use it as a diagnostic tool for Ms. Willard's sentencing. ***Petition*** *(Doc. 1)* at 20-22.

To succeed on a claim of judicial bias, a petitioner must demonstrate either that the trial judge was actually biased against him or her or that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias." *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir.1994).  It is well established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted).  In addition, the petitioner must show that the judge was "unable to hold the balance

between vindicating the interests of the court and the interests of the accused." *Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir. 1989) (citation omitted).

Ms. Willard makes no showing that the trial judge was actually biased against her or that there was an appearance of bias. Ms. Willard presents no evidence that the trial court engaged in a systematic and deliberate exclusion of African-American potential jurors in the jury selection process. *See, e.g. Trujillo*, 815 F.2d at 610. Ms. Willard's claims regarding the trial court's statements at sentencing also fail to establish that the court was biased against her, especially because the sentence Ms. Willard received is the basic sentence the trial judge could have given her under the statute. *See* N.M.S.A. 1978, § 30-31-20(A)(2) (stating that a person convicted of a subsequent offense of trafficking by distributing a controlled substance is guilty of a first degree felony and shall be sentenced under N.M.S.A. 1978, § 31-18-15(A)(3) to eighteen years imprisonment); *see also* N.M.S.A. 1978, § 31-20-3 (stating that a court may alter a sentence "[u]pon entry of a judgment or conviction of any crime *not constituting a capital or first degree felony*") (emphasis added); and *State v. Taylor*, 107 N.M. 66, 71, 752 P.2d 781, 786 (N.M. 1988) ("Alterations of basic sentences are permitted only for noncaptial felonies and noncapital, nonfirst degree felonies.") (citing N.M.S.A. 1978, §§ 31-18-15 and 31-20-3). While Ms. Willard states that the trial judge's bias "may have been a contributing factor to the judge disallowing defendant her common law right of 'allocutus'" [sic], (**Petition *(Doc. 1)*** at 21), "[a] trial court's failure to afford a defendant the right of allocution raises neither a jurisdictional nor a constitutional error cognizable in habeas [proceedings]." *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995) (citation and internal quotation marks omitted).

Regarding Ms. Willard's expert witnesses, the New Mexico Court of Appeals ruled in Ms. Willard's direct appeal that the trial court's decision to exclude two expert witnesses as to

proper narcotics procedures, while allowing Ms. Willard's trial counsel to call one expert witness on the same issue, was appropriate because the testimony of all three experts could have been cumulative. **Response**, Exhibit F *(Doc. 8-1)* at 35-37.  The New Mexico Court of Appeals also held that the trial judge's decision to deny Ms. Willard's attempt to call another witness as a narcotics expert at her post-trial hearing was appropriate because "the district court had already allowed the testimony of the narcotics procedures expert at trial, this testimony had been previously weighed by the jury, and the trial judge remembered the testimony in the present context." *Id.* at 36-37.  The Court finds no bias in this ruling.  Ms. Willard also shows no evidence of bias in the trial court's rulings regarding Mr. Webb and allowing the case to proceed on the evidence presented, and, as stated above, the New Mexico Court of Appeals ruled in Ms. Willard's direct appeal that there was "substantial evidence from which a rational jury could conclude that [Ms. Willard] sold $100 of cocaine to Mr. Webb on the date at issue." **Response**, Exhibit F *(Doc. 8-1)* at 42.  Finally, this Court has already dispensed with Ms. Willard's claims regarding the dismissal of the second prospective African-American juror, the trial court's ruling regarding questioning Mr. Webb, limiting Ms. Willard's expert witnesses, the trial court allowing the case to proceed based on what Ms. Willard terms "speculation," and the use of Ms. Willard's diagnostic evaluation at sentencing. *See* Section IV.B.1. at pages 18-21.  The trial court's adverse rulings do not constitute a valid basis for Ms. Willard's claims that the trial court was biased against her.  *See Liteky*, 510 U.S. at 555. Finally, Ms. Willard's claim that the trial court "'fast tracked' [Ms. Willard] to a conviction through bypassing certain constitutional safeguards inherent in the 6th and 14th Amendment rights, 'ostensibly' for 'public safety,'" is conclusory and should be denied for that reason.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").  The Court finds that Ms. Willard's claims for

judicial bias are neither contrary to clearly established federal law, nor are they based on an unreasonable determination of the facts in light of the evidence presented.  Therefore, the Court finds that Ms. Willard's claims for habeas relief for judicial misconduct be denied.

### 3.  *Ms. Willard's Claim that the State Engaged in Prosecutorial Misconduct*

Ms. Willard next claims that the state engaged in prosecutorial misconduct by: (1) compromising the integrity of the $100 bill used in the alleged drug transaction; (2) failing to establish that the $100 bill that was given to Mr. Webb was the same $100 bill that was found on Ms. Willard; (3) failing to link the rock cocaine to Ms. Willard, and destroying the rock cocaine; (4) the failure of Agent Parker to follow unnamed task force drug-buy protocols; (5) failing to follow established protocols regarding evidence collection and tracking; (6) failing to file a police report; (7) failing to check to see if Mr. Webb had any drugs on him before the transaction took place; (8) submission of photos of currency as evidence against Ms. Willard which did not reflect the $100 bill on which her conviction was based; (9) misleading the trial court by presenting fabricated evidence; (10) failing to keep a surveillance log which shows that the investigation was sloppy and had defects; (11) the failure of the officers to have a plain view of the rock cocaine on Mr. Webb, their failure to see the drug transaction occur, and their failure to produce a taped recording of a phone call between Mr. Webb and Ms. Willard; (12) bypassing presenting the case to the grand jury; and (13) dropping the charges against Mr. Webb while pursuing Ms. Willard.  ***Petition (Doc. 1)*** at 22-26.

"[P]rosecutorial misconduct in a state court violates a defendant's right to a fair trial only if the prosecutor's actions so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Nguyen v. Reynolds*, 131 F.3d 1340, 1358 (10th Cir. 1997) (citation and internal quotation marks omitted), and *Knapp v. Janecka*, No. 09-2001, 337 Fed.Appx. 766, 771,

2009 WL 2138422 at **3 (10th Cir. July 20, 2009) (unpublished) (citations and internal quotation marks and brackets omitted).  None of Ms. Willard's claims of prosecutorial misconduct rise to this level.  First, her claims regarding the $100 bill and the rock cocaine, and the officers' alleged failure to follow evidence protocols, do not indicate how these alleged incidents of misconduct either violated her constitutional rights or infected the trial with unfairness.  As stated before, the New Mexico Court of Appeals ruled in Ms. Willard's direct appeal that there was "substantial evidence from which a rational jury could conclude that [Ms. Willard] sold $100 of cocaine to Mr. Webb on the date at issue," (*Response*, Exhibit F *(Doc. 8-1)* at 42), and Ms. Willard presents no facts that would dispute this holding.  Similarly, Ms. Willard's claim that the officers did not have a plain view of the rock cocaine on Mr. Webb, did not see the drug transaction occur, and did not produce a taped recording of a phone call between Mr. Webb and Ms. Willard, fail to explain how Ms. Willard's constitutional rights were violated by the state's actions and, therefore, should be denied.  To the extent Ms. Willard is claiming prosecutorial misconduct because the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Ms. Willard must show that: 1) the prosecution suppressed evidence; 2) the evidence was favorable to the Ms. Willard; and 3) the evidence was material.  *United States v. McElhiney*, 275 F.3d 928, 932 (10th Cir. 2001).  Ms. Willard has not made any of these showings.

Next, Ms. Willard's claims that the prosecution misled the trial court by presenting fabricated evidence and failing to keep a surveillance log are conclusory because Ms. Willard does not state what the fabricated evidence was, nor does she state how the lack of information in a surveillance log infected her trial with unfairness.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").  Ms. Willard's claim that the prosecution should have presented her charges to a grand

jury also fails because, again, Ms. Willard does not show how failing to present her charges to a grand jury violated her constitutional rights or infected her trial with unfairness.  The same is true for her claim of prosecutorial misconduct because the state dropped the charges against Mr. Webb while it pursued Ms. Willard.  Again, this is a conclusory statement that fails to establish that the prosecution violated Ms. Willard's constitutional rights or that her trial was unfair, especially because the charges against Mr. Webb were dropped because he was found to be incompetent, not because of any impermissible reason by the prosecution.  *See Response*, Exhibit C *(Doc. 8-1)* at 9-10 (stating that Mr. Webb was deemed incompetent and he was dismissed as a co-defendant with Ms. Willard and not presented as a witness).  For the reasons stated above, the Court recommends denying Ms. Willard's claims of prosecutorial misconduct.

### 4.  Ms. Willard's Claim Regarding Insufficiency of the Evidence

Finally, Ms. Willard claims that the evidence against her was insufficient to sustain her conviction.  *Petition (Doc. 1)* at 26-27.  The New Mexico Court of Appeals ruled in Ms. Willard's direct appeal that "the officer's testimony about the sequence of events that led up to Mr. Webb and [Ms. Willard]'s meeting, as well as the fact that Mr. Webb was arrested with the cocaine and [Ms. Willard] was arrested with a $100 bill in her hand immediately thereafter, provide substantial evidence from which a rational jury could conclude that [Ms. Willard] sold $100 of cocaine to Mr. Webb on the date at issue."  *Response*, Exhibit F *(Doc. 8-1)* at 42.  Evidence of guilt is sufficient if, when viewed in the light most favorable to the prosecution, any rational jury could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  For a habeas review of sufficiency of the evidence claims under 28 U.S.C. § 2254(d)(1), this Court must decide whether the court of appeals "reasonably decided that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.'"  *Torres v. Lytle*, 461 F.3d 1303, 1313 (10th Cir. 2006) (quoting *Jackson*, 443 U.S. at 319). As explained above in Section IV.A., habeas claims that were adjudicated on the merits in state court proceedings are entitled to the deferential AEDPA standard of review under 28 U.S.C. § 2254(d).  In addition, the standard of review for claims asking this Court to evaluate what a reasonable jurist could have decided about a reasonable juror, is described by the Tenth Circuit as "deference squared."  *Torres v. Lytle*, 461 F.3d at 1313.  The Court agrees with the state court holding that a rational trier of fact could have found sufficient evidence of the elements of the crime of trafficking controlled substances by distribution.

In the alternative, under 28 U.S.C. § 2254(d)(2), the issue is whether the decision of the court of appeals was based on an unreasonable determination of the facts in light of the evidence presented.  While there is "some debate" in the Tenth Circuit as to whether a challenge to the sufficiency of the evidence is a question of law subject to review under 28 U.S.C. § 2254(d)(1), or a question of fact subject to review under 28 U.S.C. § 2254(d)(2), the Tenth Circuit has treated the issue as a legal one when the habeas petitioner did not specifically challenge the state court's factual findings.  *See Torres v. Mullin*, 317 F.3d 1145, 1151-52 (10th Cir. 2003).  Here, Ms. Willard does not appear to contend that the state court's factual findings were erroneous, but nevertheless, the Court finds that even upon review under 28 U.S.C. § 2254(d)(2), the New Mexico Court of Appeals' decision on Ms. Willard's direct appeal was not based on an unreasonable determination of the facts in light of the evidence presented.  The undersigned, therefore, recommends that Ms. Willard's claim on the basis of insufficient evidence to convict be denied.

### C. Conclusion

For the foregoing reasons, the Court finds that habeas relief is not warranted on Ms. Willard's claims. Ms. Willard has failed to establish that the adjudication of her claims on the merits in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §§ 2254(d)(1)-(2). Therefore, the Court recommends that this case be dismissed with prejudice and that Ms. Willard's *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be denied.

### RECOMMENDED DISPOSITION

The Court recommends that Ms. Willard's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.


_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**